**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

SONIA ANTOINETTE DODD,

        Petitioner,

vs.                          Case No.    3:12-cv-1084-J-34MCR
                                                        3:09-cr-51(S1)-J-34MCR

UNITED STATES OF AMERICA,

        Respondent.
_____/

## <u>ORDER</u>

**THIS CAUSE** is before the Court on the Report and Recommendation (Dkt. No. 32;

Report), entered by the Honorable Monte C. Richardson, United States Magistrate Judge,

on May 4, 2015.  In the Report, Judge Richardson recommends that Petitioner Sonia

Antoinette Dodd's Motion to Vacate Under 28 U.S.C. § 2255 (Dkt. No. 1; Motion to Vacate)

be denied.[1]  <u>See</u> Report at 32.  On May 18, 2015, Dodd filed objections to the Report.  <u>See</u>

Petitioner's Objections to Magistrate Judge's Report and Recommendation (Dkt. No. 33;

Objections).  Respondent filed a response to the Objections on June 1, 2015.  <u>See</u> United

---

[1]      Dodd raised a number of claims in the Motion to Vacate, <u>see generally</u> Motion to Vacate, all but one of which the Court resolved by prior Order, <u>see</u> Order (Dkt. No. 19).  As to this remaining issue, that Dodd's counsel was ineffective in failing to appropriately advise her of the immigration consequences of a guilty plea, the Court determined that Dodd was entitled to an evidentiary hearing. <u>See id.</u> at 28.  As such, the Court referred this claim to the assigned Magistrate Judge to appoint counsel to represent Dodd, conduct an evidentiary hearing on this claim, and prepare a Report and Recommendation recommending a resolution of the claim.  <u>See id.</u> at 26-27.  After appointing counsel, the Magistrate Judge conducted the requested evidentiary hearing.  <u>See</u> Transcript of Evidentiary Hearing (Dkt. No. 29; Tr.).  Recommending that Dodd's request for relief on the sole remaining issue be denied, the Magistrate Judge consequently recommends denial of the Motion to Vacate.

States' Response to Petitioner's Objections to the Report and Recommendation (Dkt. No. 34; Response).  Thus, the matter is ripe for review.

The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b).  If no specific objections to findings of facts are filed, the district court is not required to conduct a de novo review of those findings.  See Garvey v. Vaughn, 993 F.2d 776, 779 n.9 (11th Cir. 1993); see also 28 U.S.C. § 636(b)(1).  However, the district court must review legal conclusions de novo.  See Cooper-Houston v. Southern Ry. Co., 37 F.3d 603, 604 (11th Cir. 1994); United States v. Rice, No. 2:07-mc-8-FtM-29SPC, 2007 WL 1428615, at * 1 (M.D. Fla. May 14, 2007).

The Court will first consider Dodd's objections to the Magistrate Judge's factual findings.  Preliminarily, the Court notes that Dodd does not object to the Magistrate Judge's credibility determination.  See Objections at 12.  This is perhaps because the credibility findings made by the Magistrate Judge are without question fully supported by the record. Thus, the Court will turn to Dodd's objections to the Magistrate Judge's factual findings and conclusions.

In the Objections, Dodd argues that "the evidence does not support the conclusion that petitioner's daughter [co-defendant Branddie Campbell] was going to testify against petitioner or that the petitioner believed that her daughter would testify against her." Objections at 6.  This statement is refuted by the record.  Dodd herself testified under oath that counsel "called my sister at her house to let my sister know that my daughter was going to be testifying against me." Tr. at 40.  Additionally, in response to the question "and you

-2-

said that you learned that your daughter was going to testify against you?", Dodd responded "well, that's what he told my sister." Id. Along with the Motion to Vacate, Dodd submitted Movant's Memorandum of Facts and Supporting Citations of Law in Support of Title 28 U.S.C. §2255 Motion to Vacate Conviction and/or Set Aside Sentence of a Federal Prisoner (Dkt. No. 2; Memorandum) with exhibits. As an exhibit to the Memorandum, Dodd provided the Court a letter she wrote to her counsel, Wade Rolle, on February 24, 2010. See Memorandum Ex. G. In that letter, Dodd states that Rolle "swore up and down" that the Assistant United States Attorney told him that Dodd's daughter "was going to testify against [her]." Id. Also in support of the Motion to Vacate, Dodd submitted to the Court an affidavit signed by her sister, Donna Marie Dodd, confirming that Rolle told her that Dodd's daughter "would be testifying against [Dodd]." Memorandum Ex. C. Despite all of his, Dodd cites to counsel's statement that he was made aware that Dodd's daughter "would likely testify against her" and that seemed to deflate her intentions of going to trial. Objections at 7. Counsel also testified that Dodd "didn't like the fact that there was the possibility that her daughter could come in and testify against her. . . . [S]he was upset at the possibility of her daughter testifying against her in trial. That affected–that's what affected the plea." Tr. at 98-99. Neither of these statements by Dodd's counsel detracts from Dodd's own sworn testimony and evidence, which unambiguously reflect what she understood and believed -- that her daughter was going to testify against her.

Dodd also suggests that her daughter's decision could not have made such a difference to her because Dodd would have known of the possibility of her daughter testifying throughout the entirety of the proceedings. She seems to suggest that because

it always was a possibility, counsel's revelation of her daughter's actual intent to testify would not have caused her to change her mind about going to trial.  Dodd ignores the fact that while there may always have been some possibility of her daughter testifying against her, until the night before she pled guilty, Dodd understood that her daughter would not testify against her and intended to go to trial alongside Dodd.  It was only upon being advised by counsel that her daughter had pled guilty and would, or as Dodd now claims would likely, testify against her that the circumstances changed.  Whether counsel informed Dodd that her daughter would testify against her (as the Court finds) or that her daughter had pled guilty and would likely testify against her (as Dodd claims), counsel's testimony that Dodd was deflated by the news and inquired about a possible plea remains, and the Magistrate Judge correctly credited that testimony.

Next, the Court addresses Dodd's contention that the Plea Agreement was not as beneficial as the Magistrate Judge suggests.  See Objections at 7.  Contrary to the assertions in the Objections, the benefits provided by the Plea Agreement were substantial.  As part of the Plea Agreement, the government agreed to recommend that Dodd receive a two-level reduction for acceptance of responsibility and that the Court hold Dodd accountable for less than 1000 kilograms of marijuana.  The net effect of these recommendations would have been to lower Dodd's advisory guidelines range pursuant to

the United States Sentencing Guidelines from 210-262 months[2] to 140-175 months.[3] Although the Court ultimately rejected the parties' agreement with respect to the lesser drug amount, at the time Dodd entered her plea, she certainly hoped the Court would accept the agreement. Notably, but for the Plea Agreement, Dodd had no reason to rationally expect that she would be held accountable for the lesser drug amount or that she could receive the reduction for acceptance of responsibility. Additionally, by pleading guilty, Dodd avoided the very real possibility that her daughter would testify. This is significant because in the Presentence Investigation Report, the Probation Officer recommended a two-level enhancement for the use of a minor in connection with the offense. Due to the limited information regarding Dodd's daughter's participation in the Presentence Investigation Report, at sentencing, the Court declined to apply the enhancement. However, had her daughter testified at Dodd's trial, Dodd faced the likelihood that the daughter's testimony would have developed the factual basis for applying the enhancement which would have increased her guideline range to 262-327 months.[4] Accordingly, the benefits of the Plea Agreement were substantial.

---

[2]     Calculated from an offense level 32 based upon a drug quantity of at least 1000 but less than 3000 kilograms of marijuana with no reduction for acceptance of responsibility, and a criminal history category of VI.

[3]     Calculated from an offense level 28 based upon a drug quantity of less than 1000 kilograms of marijuana with a 2 level reduction in the offense level for acceptance of responsibility, and a criminal history category of VI.

[4]     Calculated from an offense level 34 based upon a drug quantity of at least 1000 but less than 3000 kilograms of marijuana with no reduction for acceptance of responsibility and a 2 level increase in the offense level for the use of a minor to commit the offense, and a criminal history category of VI.

Turning to Dodd's legal objections, Dodd contends that the Magistrate Judge's "analysis applied a higher burden than that developed in Strickland[5] and Padilla.[6]" See Objections at 5. As to this issue, the Court begins by noting that the Magistrate Judge correctly cited to both Strickland and Padilla as supplying the applicable legal standard for Dodd's claim. See Report at 27; see also id. at 2 (citing Hill v. Lockhart, 474 U.S. 52, 59 (1985)). Indeed, consistent with Padilla, he noted that Dodd could show prejudice if she established "that a decision to reject the plea bargain would have been rational under the circumstances." Id. at 28 (citing Padilla, 559 U.S. at 372). However, he also suggested that to establish prejudice Dodd had the burden of showing a "substantial likelihood that [she] would not have pled guilty under the particular circumstances of this case." Id.

To demonstrate the prejudice necessary to establish an entitlement to postconviction relief, the law requires Dodd to show "a reasonable probability that, but for counsel's errors, [s]he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); see also Lafler v. Cooper, 132 S.Ct. 1376, 1384-85 (2012); Diveroli v. United States, 803 F.3d 1258, 1263-64 (11th Cir. 2015). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S at 696; see also Woodford v. Visciotti, 537 U.S. 19, 23 (2002); Rosin v. United States, 786 F.3d 873, 877 (11th Cir.), cert. denied, 136 S.Ct. 429 (2015). Confidence in the outcome would be undermined if Dodd were to show "that a decision to reject the plea bargain would have been rational under the circumstances." Padilla, 559 U.S. at 372; see

---

[5]        Strickland v. Washington, 466 U.S. 668 (1984).

[6]        Padilla v. Kentucky, 559 U.S. 356 (2010).

also <u>Diveroli</u>, 803 F.3d at 1263, 1265; <u>Hernandez v. United States</u>, 778 F.3d 1230, 1234 (11th Cir. 2015).

While the Magistrate Judge's use of inconsistent language in evaluating Dodd's claim of prejudice is of some concern, it does not warrant the relief Dodd seeks.  The Court must conduct a <u>de novo</u> review of legal conclusions recommended in the Report.  Consistent with this obligation, the Court has thoroughly reviewed the record and is firmly convinced for all of the reasons articulated by the Magistrate Judge that Dodd has failed to show a reasonable probability that she would not have pled guilty had she known that deportation was <u>mandatory</u> rather than possible.  Indeed, given the benefits of the Plea Agreement, the strength of the government's case, the likelihood of facing her daughter as a witness for the government, and the fact that Dodd knew that deportation was at least possible and that if convicted she would face the same deportation consequences without the advantages obtained by pleading guilty, Dodd failed to make a persuasive showing that a decision to reject the plea bargain would have been rational under the circumstances.

In the Objections, Dodd contends that the fact that she attempted to withdraw her guilty plea weighs in favor of a finding that she was prejudiced by the inaccurate advice regarding deportation.  <u>See</u> Objections at 9.  The Court disagrees.  Dodd attempted to withdraw her plea based upon a myriad of assertions, none of which had any support in the record, and none of which were even remotely related to the immigration consequences of her guilty plea.  <u>See</u> Motion to Appeal Guilty Plea (Dkt. No. 284).   Far from supporting her claim that the immigration consequences of a guilty plea were critical to her decision, Dodd's prior attempt to withdraw her guilty plea only shows Dodd's willingness to rely on any

-7-

potential basis to escape the consequences of her actions.

Additionally, the Court rejects Dodd's contention that the Magistrate Judge relied too heavily on the strength of the government's case. See Objections at 10-11. In assessing whether Dodd made the requisite showing that rejecting the Plea Agreement "would have been rational under the circumstances," see Padilla, 130 S.Ct. at 1485, it was entirely appropriate, indeed necessary, for the Court to consider the strength of the government's case. Moreover, the Magistrate Judge did not rely solely on the strength of the case. Instead, he viewed the government's evidence in light of the fact that Dodd would have known that she would face the same immigration consequences of a conviction if she were convicted at trial and in light of the benefits she obtained by virtue of the Plea Agreement. In doing so, he correctly concluded that Dodd failed to show that despite knowing she could be deported as a result of a conviction, it would have been rational for her to reject the Plea Agreement if she had known that she would be deported.

In reaching this decision, the Court, like the Magistrate Judge, rejects as not credible, Dodd's contention that she would not have pled guilty had she known deportation was certain. See Report at 36. In addition to all of the reasons discussed by the Magistrate Judge, the Court notes that while counsel did not embrace the contention, at the time Dodd filed the Motion to Vacate she contended that when she pled guilty, she did not even know that she "could" be deported. See Memorandum at 9 ("Ms. Dodd only learned that she could be deported after being shipped off to prison and seeing women just like her, deported after unknowingly pleading guilty"). This suggestion is simply false. Preliminarily, the Court has accepted counsel's sworn testimony that he advised Dodd that a conviction would

subject her to deportation proceedings, and as such, Dodd was aware of the possibility of deportation.  Additionally, the Court notes that the transcript of the detention hearing, which Dodd herself attended, reflects that the prosecutor advised that Dodd was subject to deportation if convicted and that the Magistrate Judge repeated the prosecutor's statement in making his detention findings.  See Transcript of Digitally Recorded Detention Hearing (Dkt. No. 35) at 31, 43.  Moreover, as noted by the Magistrate Judge in his written detention order, he found that Dodd faced the possibility of deportation if convicted.  See Order of Detention Pending Trial (Dkt. No. 71) at 2.  Thus, Dodd's suggestion that she did not even know that she could be deported is refuted by the record.

Dodd further fails to make any credible showing that a certainty of deportation, as opposed to the possibility of deportation, would have caused her to reject the benefits afforded by the Plea Agreement.  Indeed, any suggestion that she would have done so is belied by Dodd's statement in an affidavit submitted to the Court during this postconviction proceeding.  See Motion Requesting Leave of Court to Amend "Reply to United States' Response in Opposition to Petitioner's Pro Se Motion Pursuant to § 2255" with Attached "Affidavit of the Petitioner's Dealings and Discussions Had With Her Third Court-Appointed Attorney Noel G. Lawrence" (Dkt. No. 15; Motion to Amend) Ex. 1 (Petitioner's Affidavit). In the Petitioner's Affidavit, Dodd states under oath that after learning that she could be deported she asked her counsel whether she should do a treaty transfer.[7]  See Petitioner's Affidavit at 2.  Specifically, she swears:

---

[7]        The International Prisoner Transfer Program allows a federal prisoner to request a transfer to his or her home country if the United States has a treaty with that country.  See How the Program Works, U.S. Dep't of Justice Criminal OEO Int'l Prisoner Transfer Program (May 26, 2015), https://www.justice.gov/criminal-oeo/how-program-works.

> Mr. Lawrence and I never really discussed any immigration issues or consequences until I got to prison and he told me that "If you are deported, it wouldn't be so bad, considering that you're from England." Thereafter, I asked him if I should do a treaty transfer and he told me to hold on because some new laws were coming.

Id. Dodd's inquiry about a treaty transfer to England after "learning" that she "could" be deported is entirely inconsistent with a person willing to roll the dice and risk a substantially greater sentence just to secure the possibility of remaining in the United States.

In sum, the Court confirms that Dodd failed to demonstrate prejudice resulting from any inaccurate advice from counsel regarding the immigration consequences of her guilty plea. Specifically, Dodd has not shown a reasonable probability that, but for counsel's errors, she would not have pled guilty. She has not demonstrated that it would have been rational under the circumstances to reject her plea bargain and proceed to trial.

Upon a thorough independent review of the file and for the reasons stated in Judge Richardson's Report, the Court will overrule the Objections. With the exception of a scrivenor's error in Footnote 10 on Page 10,[8] the Court accepts the factual findings set forth in the Report. Additionally, having conducted a de novo review of the legal conclusions in the Report, modifying the analysis and applying the legal standard as stated in this Order, for the reasons stated in the Report and as supplemented here, the Court concludes that Dodd has failed to make a plausible showing that she suffered prejudice as a result of counsel's failure to accurately advise her of the immigration consequences of a guilty plea. As such, the Court will deny relief as to this claim. Having previously denied relief as to all

---

[8] It is evident from a reading of the Report that the reference to attorney "Falcon" in Footnote 10 is intended to read "Rolle." Nevertheless, the Court in an abundance of caution confirmed Rolle's status as a member "in good standing" of the Florida Bar during the relevant time frame. Thus, the Court reads Footnote 10 as referring to Attorney Wade Rolle.

of the other claims raised by Dodd, <u>see</u> Order, at this time Dodd's Motion to Vacate is due to be denied.

**ORDERED:**

1.    Petitioner's Objections to Magistrate Judge's Report and Recommendation (Dkt. No. 33) are **OVERRULED**.

2.    The Magistrate Judge's Report and Recommendation (Dkt. No. 32), as modified and supplemented herein, is **ADOPTED**.

3.    Petitioner Sonia Antoinette Dodd's Motion to Vacate Under 28 U.S.C. § 2255 (Dkt. No. 1) is **DENIED**.

4.    The Clerk of the Court is directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 31st day of March, 2016.

**MARCIA MORALES HOWARD**
United States District Judge

Copies to:

The Honorable Monte C. Richardson
United States Magistrate Judge

Counsel of Record

Petitioner Sonia Antoinette Dodd